**O**

# United States District Court
# Central District of California

FEDERAL INSURANCE COMPANY,

                Plaintiff,

     v.

THE DENTISTS INSURANCE
COMPANY,

               Defendant.

Case No. 2:14-cv-08737-ODW(ASx)

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [33, 34]**

## I.   INTRODUCTION

Before the Court are cross-motions for summary judgment that turn on one single, operative issue: whether Defendant The Dentists Insurance Company ("TDIC") had a duty to defend against the claims and damages alleged in an underlying state court suit, *Jose Luis Anguiano v. MCD Arcade Lane, LLC, et al.* (hereinafter "Underlying Suit"). For the reasons discussed below, the Court concludes

that TDIC had a duty to defend as a matter of law.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment, and **GRANTS** Plaintiff's Motion for Partial Summary Judgment.[1]

## II.    FACTUAL BACKGROUND

### A. Parties and Pertinent Policies

Plaintiff Federal Insurance Company ("Federal") brings a purely equitable action against Defendant TDIC for declaratory relief, equitable contribution, equitable subrogation, and equitable indemnity.  (Second Am. Compl. ["SAC"] 64–102, ECF No. 29.)  At issue is the responsibility for payment of the defense and settlement of a personal injury action.  (*Id.* ¶ 6; TDIC's Mot. for Summ. J. ["TDIC Mot."] 2, ECF No. 33; Federal's Mot. for Partial Summ. J. ["Federal Mot."] 1, ECF No. 34-4.)

Federal's insureds own and maintain a multi-unit commercial building at 696 East Colorado Boulevard in Pasadena, California, known as Arcade Lane.  (Joint Statement of Undisputed Facts ["JSUF"] ¶¶ 1–2.)  MDC Arcade, LLC and MMV Properties, LLC own the building, and Morlin Management Corporation and Morlin Asset Management are the property managers for the space (collectively, the "Landlords").  (*Id.* ¶ 3–4.)  TDIC's insured, Dr. Edward Murachanian, operates a dental office in Suite 204 of this building.  (*Id.* ¶¶ 1–2, 7.)  TDIC issued Dr. Murachanian a Professional & Business Liability policy (hereinafter, "TDIC Policy"), which included three Dental Business Liability Additional Insured Endorsements.  (*Id.* ¶ 17.)  Both parties agree that the Landlords were covered by these Additional Insured Endorsements.  (*Id.* ¶ 18–19.)

The pertinent language in the TDIC Policy reads as follows:

### I.  *Coverage Agreements*

…

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

    **B.** *Coverage B – Dental Business Liability*

        **We** will pay on the **insured's** behalf all sums the **insured** becomes legally obligated to pay as damages because of **bodily injury, personal injury, advertising injury** or **property damage** to which this insurance applies.

        This coverage applies only to **bodily injury** and **property damage** that happens during the **policy period** and that is caused by an **occurrence**.

        This coverage applies only to **personal injury** and **advertising injury** arising out of an offense committed during the **policy period**.

        This coverage applies only to injury that results from **your** practice of the dental profession.

…

    **G.** *Defense*

        1.    Coverages A, B and C

            **We** have the right and duty to defend, with defense counsel selected by **us**, any **suit** against an **insured** seeking damages covered by Coverage A, B and C.   **We** may investigate and, subject to the provisions of Condition 1, settle any **claim** as **we** deem expedient, but **we** shall not be obligated to pay any **claim** or judgment or defend any **suit** after the applicable limit of **our** liability has been exhausted by payment of judgments or settlements.

(TDIC Policy, JSUF Ex. A at 7, 9 (emphasis in original).)   Under the Additional Insured Endorsements, the Landlords were listed as additional insureds, with coverage under Coverages B ("Dental Business Liability") and E ("Medical Waste Legal Defense Reimbursement").  (*Id.* at 52–58.)

However, the duty to defend does not exist for suits outside the coverage of Coverage B.   The TDIC Policy lists two exclusions to Coverage B, and explicitly

states that "[t]he insurance afforded the lessor does not apply to: . . . **Liability arising out of any acts or omissions of the lessor**, the lessor's contractors, vendors or service providers, or anyone acting on the lessor's behalf." (TDIC Policy, JSUF Ex. A at 22 (emphasis added).) Therefore, per the TDIC Policy, negligent actions by the lessor, or the additional insureds, would not warrant Coverage B coverage or trigger the duty to defend.

### B. Anguiano Incident

While subject to the TDIC Policy's coverage, on October 3, 2012, Dr. Murachanian arranged for Jose Anguiano, a contracted carpet cleaner with Arax Carpet Cleaning, to clean his dental office carpets while he was away on vacation. (JSUF ¶¶ 8–9.) In order to complete this task, Anguiano and a colleague had to run hoses and electrical cords up a common area stairway and into the dental office suite. (Gonzalez Depo. at 47:22–48:25, JSUF Ex. G.) When Anguiano's vacuum would clog or overflow, he and his colleague would use five-gallon buckets to transport the dirty water from the vacuum up the stairs and into the dental suite for disposal. (*Id.* at 96:25–98:3.) In the course of emptying the vacuum, Anguiano fell on the common area stairs and suffered catastrophic injuries. (JSUF ¶ 11.) The exact mechanism by which Anguiano fell is unclear.

On April 22, 2013, Anguiano and his wife filed suit in state court against MCD Arcade Lane, LLC—the property management company that owns Arcade Lane. (*Id.* ¶ 13.) As a Federal insured, Federal defended and indemnified its insureds under its commercial general liability policy (hereinafter "Federal Policy"). (*Id.* ¶ 26.) Anguiano's complaint alleged that the common area stairs were in a dangerous condition and/or not up to code, and that the negligent maintenance of those stairs led to Anguiano's slip-and-fall and the subsequent injuries to his cervical spine and spinal cord. (Underlying Suit ¶¶ 19–22, JSUF Ex. D.) Anguiano later added the three remaining Landlords (MMV Properties, Morlin Management, and Morlin Asset) as Doe Defendants or as Defendants in his workers' compensation claim. (JSUF ¶ 13.)

Dr. Murachanian was not named as a defendant in the state court action.   On May 29, 2013, MCD Arcade filed a cross-complaint against Dr. Murachanian for indemnification, apportionment of fault, declaratory relief, and express indemnity. (JSUF ¶ 14.)   Later, the remaining Landlord entities filed nearly identical cross-complaints and answers in the state court action.  (*Id.*)

MCD Arcade then filed a Motion for Summary Adjudication on March 7, 2014, arguing that Dr. Murachanian (vis-à-vis TDIC) had a duty to defend and indemnify MCD Arcade with respect to Anguiano's suit and the related workers' compensation claim.  (JSUF ¶ 15.)  The Motion was denied.  (*Id.*)  Dr. Murachanian, through TDIC, then filed his own Motions for Summary Judgment (or, alternatively, Summary Adjudication) on the Landlords' cross-complaints.  (*Id.* ¶ 16.)  The court ruled in favor of Dr. Murachanian as to Landlords Morlin Management and Morlin Asset, but severed and stayed the actions against MCD Arcade and MMV Properties pending resolution of property managers' summary judgment appeals.  (*Id.*)

As per the TDIC Policy, TDIC defended Dr. Murachanian against the cross-complaints.  (*Id.* ¶ 21.)   In the course of its defense, TDIC's counsel investigated the incident and reported its findings to TDIC.  (JSUF 22–23.)   Relevant facts gleaned from this investigation, which are based on deposition testimony in the underlying matter, include:

- Anguiano and his Arax colleague ran electric cords and two hoses from their carpet cleaning machine up the common area stairway and into Dr. Murachanian's dental office suite.  (Gonzalez Depo. at 47:22–48:25.)
- While cleaning the carpet, Anguiano's vacuum would fill with dirty, soapy water and lose suction.  This required Anguiano to empty the vacuum on the ground floor and carry five-gallon buckets full of the soiled water up the stairs and into the dental suite for disposal.  Anguiano had to refill those buckets at least eight times.  (*Id.* at 93:17–19; Anguiano Depo. at 71:19–73:14, JSUF Ex. H.)

- Anguiano fell and/or tripped while carrying two full five-gallon buckets up to the dental suite for disposal.  (Anguiano Depo. at 90:4–96:2.)

- At the time of his accident, soapy water coated the stairs, and the soapy mixture made the stairs even more slippery.  (Skenderian Depo. at 75:12–20, JSUF Ex. T.)

- A property management employee, Haymond Bell, told Dr. Murachanian that he had concerns about cleaners running their hoses up common area stairwells, and Bell specifically requested that Dr. Murachanian's cleaning company, Arax Cleaning, not run their hoses up the stairway.  (Bell Depo. at 88:17–89:11, JSUF Ex. I.)

TDIC refused to defend the Landlords in the Underlying Suit, and memorialized this denial in five letters between May 2013 and November 2014.  (*Id.* ¶ 25.)  In one such letter from July 2013, TDIC argued that, because Anguiano's fall occurred outside the leased premises and in a common area, the tenant (and *ipso facto* his insurer) could not be held responsible.  (JSUF Ex. L.)  Federal, through its insureds Morlin Asset and Morlin Management, shouldered the costs of defending the Landlords in the Underlying Suit.  (JSUF ¶ 16.)

Federal filed the attendant suit to establish that the Landlords were entitled to coverage by Dr. Murachanian's insurer, TDIC.  (Federal Mot. 16.)  After filing this action, Federal settled the state court lawsuit and related workers' compensation lien for $3.5 million.  (SAC ¶ 35.)  Federal exhausted its insured's Commercial General Liability $1 million limit and paid $2.5 million under the insured's Commercial Excess & Umbrella Insurance policy.  (*Id.* ¶¶ 37–40.)  Federal contends that the cost of defending the four Landlord entities in the *Anguiano* suit should be borne by TDIC.  (*Id.* ¶ 8.)  TDIC, in turn, argues that no duty to defend existed as to the Landlords.  (TDIC Mot. 2.)

The Federal and TDIC's cross-motions as to the duty to defend are now before the Court for consideration.

1

### III.   LEGAL STANDARD

2      Summary judgment is appropriate where "there is no genuine dispute as to any

3  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

4  P. 56(a).  The moving party bears the initial burden of identifying relevant portions of

5  the record that demonstrate the absence of a fact or facts necessary for one or more

6  essential elements of each claim upon which the moving party seeks judgment.

7  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8      If the moving party meets its initial burden, the opposing party must then set out

9  specific facts showing a genuine issue for trial in order to defeat the motion.

10  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P.

11  56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do

12  more than make "conclusory allegations [in] an affidavit."  *Lujan v. Nat'l Wildlife*

13  *Fed'n*, 498 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324.  Summary

14  judgment must be granted for the moving party if the nonmoving party "fails to make

15  a showing sufficient to establish the existence of an element essential to that party's

16  case, and on which that party will bear the burden of proof at trial."  *Id* at 322; *see*

17  *also Abromson v. Am. Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997).

18      In light of the facts presented by the nonmoving party, along with any

19  undisputed facts, the Court must decide whether the moving party is entitled to

20  judgment as a matter of law.  *T.W. Elec. Serv., Inc. v. Pac Elec. Contractors Ass'n*, 809

21  F.2d 626, 631 (9th Cir. 1987).  When deciding a motion for summary judgment, "the

22  interferences to be drawn from the underlying facts . . . must be viewed in the light

23  most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v.*

24  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(citation omitted); *Valley Nat'l Bank of*

25  *Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment

26  for the moving party is proper when a rational trier of fact would not be able to find

27  for the nonmoving party on the claims at issue.  *Matsushita*, 475 U.S. at 587.

28

# IV.   DISCUSSION

Federal and TDIC each move for summary judgment as to whether TDIC had a duty to defend the Landlords as Additional Insureds in the Underlying Suit.  (TDIC Mot. 2; Federal Mot. 1.)  The duty to defend is a matter of contract interpretation, and the interpretation of insurance contracts is a question of law for the court, which may be adjudicated on summary judgment.  *S'ern. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th Cir. 2003).

Because the duty to defend is so broad as to encompass even a mere possibility of coverage, the Court concludes that TDIC owed a duty to defend the Landlords as a matter of law.

## A. TDIC POLICY: TRIGGERING THE DUTY TO DEFEND

Before deciding whether TDIC had a duty to defend Federal's insureds in the underlying action, the Court must first interpret the coverage provisions and exclusions in the TDIC policies at issue.  *See Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 939 (2003) ("[I]n determining whether allegations in a particular complaint give rise to coverage under a comprehensive general liability policy, courts must consider both the occurrence language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms." (citing *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994))).

Under California law,[2] interpretation of an insurance policy, as with any other contract, is a legal matter for the Court and therefore interpretation of such policies does not fall to the trier of fact.  *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995); *see also Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App.

---

[2] Because the subject matter of the insurance contract was located in California, the Court will apply California law.  *See Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993) (California choice of law rules place particular importance on the location of the insured risk).

4th 1, 10–11 (1996) ("Interpretation of an insurance policy is primarily a judicial function.").

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1636). To ascertain the parties' intent, the Court must look first to the language of the policy itself. *Id.*; *A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal. App. 4th 1470, 1478 (1995). If, given their "common and popular meaning," the contract terms are clear and explicit, they control. *See Bank of the West*, 2 Cal.4th at 1264 (citing Cal. Civil Code § 1638); *see also Republic Indem. Co. of Am. v. Schofield*, 47 Cal. App. 4th 220, 225 (1996) (provisions are to be "interpreted in their 'ordinary and popular sense'"). However, a policy provision is "ambiguous when it is capable of two or more constructions, both of which are reasonable." *La Jolla Beach & Tennis Club v. Indus. Indem. Co.*, 9 Cal.4th 27, 37 (1994) (internal quotations omitted). "'Courts will not adopt a strained or absurd interpretation [of the policy language, however,] in order to create an ambiguity where none exists.'" *Id.* (quoting *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982)). Where ambiguity is found, policy terms must be construed to give effect to the objectively reasonable expectations of the insured. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867 (1993). If application of these rules does not eliminate or resolve an ambiguity in the policy, it is resolved against the insurer and in favor of liability under the policy. *La Jolla Beach & Tennis Club*, 9 Cal.4th at 37; *Bank of the West*, 2 Cal.4th at 1265.

Here, the TDIC Policy and Additional Insured Endorsements are clear, and no ambiguity exists as to their applicability. The TDIC Policy provides Coverage B coverage to the Landlords as additional insureds—no dispute exists as to that fact. (JSUF ¶ 18–19.; *see also* TDIC Policy, JSUF Ex. A at 52–58.) The exceptions to Coverage B, as part of the contract, must likewise be read as to their plain meaning. According to the TDIC Policy, lessors and insureds covered under Coverage B would

1    *not* be granted a defense where "liability [arises] out of any acts or omissions of the

2    lessor."  (TDIC Policy, JSUF Ex. A at 22.)  The common interpretation of this clause

3    would hold that the negligence of the lessor/insured would not trigger the duty to

4    defend.  Therefore, if the Landlords were at fault in Anguiano's accident, TDIC would

5    have no duty to defend.

6

7    **B. THE DUTY TO DEFEND**

8        The Court concludes that, based on the facts known to the parties at the time of

9    Anguiano's accident and later during litigation of the Underlying Suit, it was not clear

10   that the Landlords' negligence, and their negligence alone, caused Anguiano's fall.

11   Therefore, because the accident was not clearly one outside the purview of the TDIC

12   Policy, TDIC owed a duty to defend its Additional Insureds.

13        To determine whether an insurer has a duty to defend, courts must first

14   compare the allegations of the complaint with the terms of the policy, and ascertain

15   whether the facts alleged, together with facts not alleged but known to the insurer at

16   the inception of the lawsuit or tender of defense, reveal a possibility that the claim is

17   covered.  *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 295 (1993) ("*Montrose*

18   *I*"); *see also Sys. XIX, Inc. v. United Capitol Ins. Co.*, No. C 98-0481 MJJ, 1999 WL

19   447599, * 5 (N.D. Cal. June 23, 1999) (the duty to defend inquiry "focuses on what

20   the insurer knew or should have known at the time of declining coverage").

21        Facts outside the allegations of the complaint are considered because of the

22   possibility that the pleadings could be amended to state a covered claim.  *See*

23   *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (2005) ("But the duty also

24   exists where extrinsic facts known to the insurer suggest that the claim may be

25   covered"); *Montrose I*, 6 Cal.4th at 296 ("[F]acts known to the insurer and extrinsic to

26   the third party complaint can generate a duty to defend, even though the face of the

27   complaint does not reflect a potential for liability under the policy. This is so because

28   current pleading rules liberally allow amendment; the third party plaintiff cannot be

the arbiter of coverage." (citations omitted)).  "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor."  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993); *see also Modern Dev. Co.*, 111 Cal. App. 4th at 942.  The duty to defend is not without limits, however.  "'[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'"  *La Jolla Beach & Tennis Club*, 9 Cal.4th at 39 (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966)).

Under California law, an insurer has a broad duty to defend its insured, which "may apply even in an action where no damages are ultimately awarded."  *Scottsdale Ins. Co.*, 36 Cal.4th at 654 (citing *Horace Mann Ins. Co.*, 4 Cal.4th at 1081).  The duty to defend "applies even to claims that are 'groundless, false, or fraudulent,' [and] is separate from and broader than the insurer's duty to indemnify."  *Waller*, 11 Cal.4th at 18.  In *Montrose I*, and again in *Montrose Chem. Corp. v. Superior Court*, 10 Cal.4th 645 (1995) (*Montrose II*), the California Supreme Court held that when a suit against an insured alleges a claim that "potentially" or even "possibly" may subject the insured to liability for covered damages, an insurer must defend unless and until it can demonstrate, by reference to "undisputed facts," that the claim is not covered. *Montrose I*, 6 Cal.4th at 299–300; *Montrose II*, 10 Cal.4th at 661–62 n.10; *see also Pardee Constr. Co. v. Ins. Co. of the West*, 77 Cal. App. 4th 1340, 1351 (2000).

As a threshold matter, it is clear that Anguiano's state court action is a "suit" seeking damages against the Landlords as Additional Insureds due to an "occurrence" causing "bodily injury" during the TDIC Policy period.  (*See* TDIC Policy, JSUF Ex. A at 7, 9 (emphasis omitted).)  Those bare facts alone give rise to the duty to defend. And because even a possibility of coverage gives rise to the duty, TDIC should have defended its additional insureds where an "occurrence" caused "bodily injury" during the policy coverage period.  *See Atlantic Mut. Ins. Co. v. J.Lamb, Inc.*, 100 Cal. App.

4th 1017, 134 (2002) (the possibility of coverage, not the causes of action asserted in the underlying complaint, triggers the duty to defend).

The Court also concludes that the evidence available to TDIC at the time it refused to defend the Landlords shows that the additional insureds were potentially covered.[3]   The evidence shows that that Landlord negligence, and Landlord negligence alone, could not be the only explanation for Anguiano's injuries, and therefore TDIC's reliance on the Coverage B exceptions is misplaced.  The fact that the injury itself occurred outside the physical confines of the dental suite does not persuade the Court that Dr. Murachanian's Additional Insureds should be denied coverage.  (*See* JSUF Ex. L.)  The purpose behind requiring a doctor to have insurance coverage for his landlords is so that, when an accident occurs in the course of providing medical care, the landlord will likewise be covered.  No landlord would lease to a business if they could find themselves personally liable for injuries caused in the course of their tenant providing medical care.

The Underlying Suit's First Amended Complaint makes clear that, as part of his use and maintenance of his dental suite, Dr. Murachanian—not the Landlords—hired Anguiano to clean the carpets in the private dental suite, and thus Anguiano was a business invitee of Dr. Murachanian.  (JSUF ¶¶ 8–9.)  Anguiano slipped in the course of cleaning the dental suite's carpets.  (*Id.* ¶ 11.)  Moreover, the extrinsic evidence available to TDIC shows that a Landlord employee told Dr. Murachanian that hoses were not to be laid in common areas, and yet Anguiano laid his cleaning hose on the stairs.  (Bell Depo. at 88:17–89:11; Gonzalez Depo. at 47:22–48:25.)

 TDIC places undue emphasis on the location of this slip and fall, and ignores the fact that Anguiano was only on those stairs to offer a service to its primary insured, Dr. Murachanian.  (JSUF ¶¶ 8–9.)  It is not outside the realm of possibility that Anguiano's decision to run hoses up the common stairwell and into the dental

---

[3] TDIC issued several refusal-to-defend letters, the last in November 2014.  (JSUF ¶ 25.)  Therefore, the Court will look at all facts known to TDIC at the time of each refusal, including the last.

suite, leaving a trail of soapy water in his wake, could have caused the fall.  Or perhaps the stairs were, in fact, negligently maintained as Anguiano alleges in his complaint.  (Underlying Suit ¶¶ 19–22.)  The point is not what *did* happen that afternoon based on 20/20 hindsight, but rather what *possible* explanations existed at the time TDIC refused to defend the Landlords as additional insureds.  It is far from farfetched to believe that spilled water and a mislaid hose could have been the cause of Anguiano's catastrophic injuries, and TDIC simply cannot pretend otherwise.

Therefore, this Court holds that no genuine issues of material fact exist as to whether TDIC owed a duty to defend its additional insureds in the Underlying Suit. The duty to defend is broad, and the Court finds as a matter of law that there was, in fact, a possibility that Anguiano's accident occurred within the TDIC Policy provisions.  *Montrose I*, 6 Cal.4th at 295 (the "bare potential or possibility of coverage" under an insurance policy will trigger the insurer's duty to defend).

## V.    CONCLUSION

Accordingly, for the reasons discussed above, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

March 7, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**